IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DINO J. BROCCOLI, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AMD 03-CV-3447 |
| ECHOSTAR COMMUNICATIONS CORP., *et al.*, | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Robert R. Niccolini
Elena D. Marcuss
McGuireWoods LLP
7 St. Paul Street, Suite 1000
Baltimore, Maryland 21202
(410) 659-4454

Counsel for Defendants
EchoStar Communications Corp.,
Dish Network Service Corp., and
Stacie Andersen

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. PLANTIFF STILL DOES NOT HAVE STANDING
    TO PURSUE THIS MATTER...............................................................................1

III. DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON
     PLAINTIFF'S RETALIATION CLAIM ...............................................................3

    A. Plaintiff Cannot Establish a Causal Connection ........................................4

    B. Plaintiff Cannot Establish that Defendants' Legitimate, Non-Retaliatory
       Reasons for their Actions were mere Pretext, or that Plaintiff would have
       been Terminated But for the Alleged Retaliation .......................................7

IV. SUMMARY JUDGMENT IS APPROPRIATE AS TO ALL OF PLAINTIFF'S
    STATE LAW CLAIMS ........................................................................................9

    A. Defendants Should be Granted Summary Judgment on Plaintiff's Invasion of
       Privacy Claim..............................................................................................9

    B. Defendants Should be Granted Summary Judgment on Plaintiff's Breach of
       Contract and Wage Payment Act Claims..................................................11

    C. Plaintiff's Reply Fails to Present Facts or Law Sufficient to Defeat Defendants'
       Motion for Summary Judgment On Plaintiff's Tortious Interference with
       Prospective Advantage and Defamation Claims.......................................13

        1. Defamation................................................................................13

        2. Tortious Interference with Prospective Advantage .........................13

V. CONCLUSION...................................................................................................15

APPENDIX OF EXHIBITS ................................................................................................16

Defendants EchoStar Communications Corp. ("EchoStar"), Dish Network Service Corp. ("Dish Network"), and Stacie Andersen ("Ms. Andersen;" collectively "Defendants"), through undersigned counsel, respectfully submit this Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment.  For the reasons discussed herein, as well as those discussed in Defendants' Memorandum of Points and Authorities in Support of their Motion for Summary Judgment, Defendants' Motion for Summary Judgment should be granted and Plaintiff's First Amended Complaint should be dismissed with prejudice as a matter of law.

## I.      INTRODUCTION

On September 17, 2004, Defendants filed their Motion for Summary Judgment ("Motion") supported by a Memorandum of Points and Authorities in Support of their Motion for Summary Judgment ("Memorandum").  On October 4, 2004, Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opposition").  Plaintiff's Opposition expends a great deal of time and effort on the broad-based allegations of Plaintiff and the testimony of certain supporting witnesses, but fails to focus on those specific facts which are actually material to the instant Motion.  Plaintiff also fails to address the legal impediments to his claims.  By doing so, Plaintiff fails to raise a genuine dispute of material fact sufficient to defeat Defendants' Motion for Summary Judgment.

## II.     PLANTIFF STILL DOES NOT HAVE STANDING TO PURSUE THIS MATTER

All of Plaintiff's claims in this matter are the property of Plaintiff's reopened bankruptcy estate and should be dismissed because Plaintiff does not have standing to pursue them.  Plaintiff, ignoring the clear facts and law, states "at all times, Mr. Broccoli has had standing to prosecute the instant case."  This is simply not true.

First, Plaintiff is presently pursuing two types of claims: Title VII claims and state tort law claims. While Plaintiff's Title VII claims were arguably abandoned by the Trustee at one time, Plaintiff's states tort law claims (and any claims against Ms. Andersen) never were. As a result, Plaintiff has never had standing to pursue these claims.

Second, even if Plaintiff <u>had</u> standing to pursue his Title VII claims, he should be judicially estopped from pursuing those claims because he misrepresented the value of his claims in his bankruptcy. <u>See</u> <u>Superior Crewboats, Inc. v. Primary P & I Underwriters</u>, 374 F.3d 330 (5th Cir. 2004) (Chapter 13 debtors failed to amend bankruptcy filings to identify personal injury lawsuit filed after their bankruptcy petition was filed but disclosed lawsuit in the Section 341 creditors' meeting inaccurately indicating that the lawsuit was prescribed; Court on judicial estoppel grounds refused to allow debtor to reopen bankruptcy and amend bankruptcy filings to cure defect); <u>Barger v. City of Cartersville, Georgia</u>, 348 F.3d 1289 (11th Cir. 2003) (Court upheld dismissal of monetary portions of discrimination claim on judicial estoppel grounds because debtor failed to disclose existence of her discrimination suit in bankruptcy filings and informed the bankruptcy trustee that her discrimination suit merely sought reinstatement as a remedy). Plaintiff valued his potential claims against EchoStar at $17,425. Plaintiff did not tell the Trustee that he had obtained Ober, Kaler, Grimes & Shriver to sue Defendants for over $8 million. (*Exhibit 16 to Memorandum.*) In both <u>Superior Crewboats</u> and <u>Barger</u>, the plaintiffs were judicially estopped from bringing claims about which they had misrepresented the value in bankruptcy, and a similar result is appropriate herein.

Finally, Plaintiff says that the Trustee should be allowed to step into his shoes. However, as of the date of this Reply, it does not appear that the Trustee has not done so. Rather, he has reported to the Bankruptcy Court that he is investigating Plaintiff's wrongful discharge claim and

2

has petitioned to be allowed to retain his firm, Sklar & Paul, as attorneys for the Trustee. *(Docket Sheet for In the Matter of: Dino J. Broccoli dated October 18, 2004 and Docket Nos. 21, 22, and 23, attached hereto as Exhibit 19.)* At this point, the instant case is being pursued by Plaintiff, not the Trustee on behalf of the bankruptcy estate. As Plaintiff does not have standing to sue, his claims should be dismissed. See Miller v. Pacific Shore Funding, 287 B.R. 47, 50-51 (D. Md. 2002).

### III. DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S RETALITAION CLAIM

The material issues for purposes of summary judgment on Plaintiff's retaliation claim are whether there is evidence of a causal connection between Plaintiff's alleged protected activity and his termination, and whether Plaintiff can establish pretext.[1] Plaintiff spends considerable effort in his Opposition attempting to demonstrate a genuine dispute of material fact on these issues, but a careful analysis reveals that none of the evidence discussed by Plaintiff actually establishes disputes sufficient to submit the retaliation claim to a jury.

---

[1] In their Memorandum, Defendants noted that Plaintiff's termination was an adverse action and conceded solely for purposes of summary judgment that Plaintiff could establish that he had engaged in protected activity. Defendants thus will not respond to Plaintiff's discussion of these elements with the exception of Plaintiff's rather conclusory argument that he was subject to two adverse actions other than his termination and that Ms. Andersen was responsible for such actions. Plaintiff's assertion that Ms. Andersen was instrumental in holding up his incentive bonuses based on the allegation in his Complaint is insufficient to withstand summary judgment given the undisputed evidence discussed elsewhere that Ms. Andersen was not responsible for that decision. See Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings…."). Ms. Andersen's awareness of the situation likewise does not evidence her responsibility. With respect to Plaintiff's promotion, a delay in the final approval of a promotion is not an adverse action. This is particularly true here because it is undisputed that Plaintiff was paid the difference between the salaries for the two positions retroactive to when he was taken off the incentive grids. See Marshall v. Illinois Dept. of Human Services, 2004 U.S. Dist. LEXIS 2296, * 18-20 (N.D. Ill. 2004), attached hereto as Exhibit 22. Finally, even if the holding up of Plaintiff's incentives and promotion are considered adverse action, Plaintiff has not establish any causal connection to any protected activity because, according to Plaintiff's theory, his complaints to Ms. Fornelius were made after these things happened.

### A. **Plaintiff Cannot Establish a Causal Connection.**

Plaintiff asserts that a causal connection is established because Ms. Andersen was the "actual decision maker responsible for [Plaintiff's] termination." Plaintiff has absolutely no direct evidence to support this claim, however, and simply ignores the clear and undisputed testimony of Mr. Skalski, Ms. Fornelius, and Ms. Andersen that it was Mr. Skalski and his management team who made the decision, not Ms. Andersen. *(Memorandum at 4-5 and 13-14.)* Instead, Plaintiff focuses on his claim that Mr. Skalski did not like Plaintiff and could not remember some details about the reorganization of the regional teams during his deposition, and then attempts to paint Ms. Andersen as having vast power over employees in general. None of this speculative argument, however, impacts upon Plaintiff's assertion that Ms. Andersen was the actual decision maker with respect to Plaintiff's termination or principally responsible for the decision.

Plaintiff relies upon the fact that, almost three years after the events, Mr. Skalski in his deposition could not remember exact details about the decisions related to the reorganization of the regional teams, such as specific discussions and the names of individuals on the regional teams in the Northeast Region or the elsewhere around the country. Plaintiff also cites Mr. Skalski's testimony that he discussed Plaintiff with Ms. Andersen, and Mr. Paulson's testimony that Mr. Skalski did not like Plaintiff and that Ms. Andersen had told Mr. Skalski that Plaintiff was not a team player. Finally, Plaintiff notes that Ms. Skalski did not sign Plaintiff's employee worksheet. From this skeletal construct, Plaintiff concludes that Mr. Skalski was not the decision maker and Ms. Andersen was, contrary to Mr. Skalski's own direct testimony.

The problem for Plaintiff is that none of these allegations actually support this conclusion. While it might be nice if Mr. Skalski could have testified in detail about each and

4

every individual who was on a regional team in September 2001, the fact that he cannot does not mean that someone else was the actual decision maker. Likewise, the fact that Mr. Skalski discussed Plaintiff with Ms. Andersen does not make her the decision maker. In his Opposition, Plaintiff conveniently skipped over the portion of Mr. Paulson's testimony between the two quoted sections in which Mr. Paulson explained: "These were the opinions of Stacie, these were the opinions of Tammy, these were the opinions that John Suranyi had before he left." *(Paulson Dep. (Ex. 7) Vol. II at 34:2-5.)* Thus, in Plaintiff's analysis, Ms. Fornelius and Mr. Suranyi must have been decision makers as well. This conclusion is thus not only illogical, but contrary to the actual undisputed testimony of Mr. Skalski himself: that <u>he</u> <u>was</u> <u>the</u> <u>decision</u> <u>maker</u>.

Finally, Plaintiff's attempt to inject a notorious quality into the fact that Mr. Skalski did not sign the termination worksheet misses the mark, as such signature is not even required under company policy. To the contrary, the policy cited by Plaintiff states that a worksheet should be signed by a director. *(Exhibit EE to Opposition.)* Mr. Paulson, who had been Plaintiff's Regional Director, had resigned less that two weeks before Plaintiff's termination, and Mr. Skalski was the Vice President for Field Operations, not the Regional Director. The worksheet was therefore signed by Robert Daniels who, as the General Manager for Baltimore, was the most senior DNSC official at the time. *(Exhibit Q to Opposition.)*

At most, Plaintiff's allegations, if believed, might lead to a conclusion that Ms. Andersen and others had some influence over the termination decision. However, in <u>Hill v. Lockheed Martin Logistics Management, Inc.</u>, 354 F.3d 277, 291 (4th Cir. 2004), the Fourth Circuit rejected the notion that liability for retaliation can be founded on mere influence. The Court wrote that employers are not liable for "the improperly motivated person who merely influences

5

the decision." Id. at 291. That an individual played a significant role in or had a substantial influence on the ultimate decision does not make that individual the decision maker. Id.

Plaintiff's evidence of Ms. Andersen's general "power," introduced through the testimony of former employees, Larry Goldman and Chip Paulson, is similarly immaterial. None of the testimony cited relates to the actual decision to terminate Plaintiff. In fact, Mr. Goldman had left the Company months before the decision to terminate Plaintiff was even made. *(Goldman Dep. (Ex. 18) at 16:3-7.)* Mr. Paulson's testimony is also so generalized as to be non-probative. Mr. Paulson testified, as quoted by Plaintiff, that people that Ms. Andersen did not like did not last. However, when asked to whom he was referring, Mr. Paulson came up blank. *(Paulson Dep. (Ex. 7) Vol. I at 69:21 - 70:11.)* What is equally telling is Mr. Paulson's reconstructionist view of history. Plaintiff attaches an email related to the termination of Larry Goldman's Administrative Assistant in which Mr. Paulson wrote: "I fully support the decision made." *(Exhibit JJ to Opposition.)* As noted by Plaintiff, Mr. Paulson now disclaims any responsibility for that decision. *(Paulson Dep. (Ex. 7) Vol. II at 8:17 – 10:10.)* Similarly, documents drafted by Mr. Paulson during his employment repeatedly commend Ms. Andersen for her professionalism and even nominated her for employee of the month. When faced with these documents, which of course contradict his current claims about Ms. Andersen, Mr. Paulson explained essentially that he was lying at the time he wrote these documents. *(Paulson Dep. (Ex. 7) Vol. II at 14:10-12, 17:20 – 19:12, 245:1 – 255:2 and Exhibits 8, 43-46 thereto.)*

Plaintiff's reliance upon Ms. Fuller's testimony also merits comment. Plaintiff claims that Ms. Andersen told Ms. Fuller that if Plaintiff had done what she wanted he would still have his job. This purported comment does not establish, much less even suggest, that Ms. Andersen was the one who decided to terminate Plaintiff. A coworker at any level might be heard to make

a comment that if a former employee had listened to him the employee would still have his job. That does not make that coworker a decision maker. Moreover, Ms. Fuller's testimony was not quite as clear as Plaintiff would like the Court to believe. In fact, in the testimony Plaintiff cites, Ms. Fuller tells different stories about the same alleged conversation. On the first day of Ms. Fuller's deposition testimony, Ms. Fuller said that she "walked in and asked Stacie and Mike Wingrove why they fired him and Stacie said because he didn't play by her rules." *(Deposition of Sandy Fuller, attached hereto as Exhibit 20 at 30:19 – 31:3.)* On the second day of her deposition testimony, Ms. Fuller said that the alleged conversation was with Ms. Andersen and not Mr. Wingrove, that she asked Ms. Andersen why she had harassed Plaintiff, and that Ms. Andersen's response was: "Basically that if he listened to her and did what she wanted, he would have his job." *(Fuller Dep. (Ex. 20) at 100:2 – 105:12.)* This alleged comment by Ms. Andersen is thus not only lacking in probative value, but inconsistently recalled as well.

Based upon the foregoing, Plaintiff simply cannot establish a causal connection, and his claim of retaliation should thus be summarily dismissed.

      **B.**    **Plaintiff Cannot Establish that Defendants' Legitimate, Non-Retaliatory Reasons for their Actions were mere Pretext, or that Plaintiff would have been Terminated But for the Alleged Retaliation.**

On the issue of pretext, Plaintiff raises two points, both previously discussed by Defendants. First, Plaintiff claims that no one else from the Northeast Regional Team was terminated. It remains undisputed, however, that the employment of both Ms. Gooden and Ms. Wilkinson, both of whom were members of Plaintiff's Regional Team, terminated around the same time as Plaintiff's. Plaintiff complains that there are no documents that reflect that these individuals left the Company because of the dissolution, but has presented no evidence to dispute this testimonial fact. The fact that Ms. Gooden's termination worksheet reflects that she was not

7

eligible for rehire because her performance was not satisfactory does not support the conclusion that she was not terminated because of the dissolution of her position.[2]  Further, Plaintiff has presented nothing that disputes that Ms. Wilkinson resigned under the understanding that her position was being eliminated.[3]  It should also be noted that though Plaintiff states that Ms. Wilkinson resigned in March 2003, the document Plaintiff cites for that assertion clearly shows that Ms. Wilkinson resigned in March 2002, just a few months after Plaintiff's termination. *(Opposition at 24 and Exhibit OO thereto.)*

Second, Plaintiff claims that he was qualified for other positions.  Strikingly, Plaintiff does not provide any evidence in his discussion of his qualification for any particular available position, and does not dispute that he was not as qualified as the individuals who became General Managers.  Plaintiff cannot be heard to complaint that he does not know what other positions were available because in his Interrogatories Plaintiff asked only for available General Manager and Regional Manager positions.  *(Plaintiff's Interrogatory to DNSC No. 15 attached hereto as Exhibit 21.)*  Despite the fact that these positions have always been Plaintiff's focus, the only evidence Plaintiff presents in response to the overwhelming evidence put forth by Defendants that Plaintiff was not qualified for these positions is the EEOC Affidavit of Mr. Goldman, who had not been employed for many months at the time of Plaintiff's termination, and Mr. Paulson's comment that the regional team was "the smartest group of people."

---

[2] Moreover, the contrast between Ms. Gooden's termination worksheet and Plaintiff's undercuts Plaintiff's theory that Ms. Andersen harbored retaliatory animus towards Plaintiff.  If she had, she could have made the same notations on Plaintiff's termination worksheet.  Instead, Ms. Andersen marked that Plaintiff was eligible for rehire and did not say his performance was unsatisfactory.

[3] Plaintiff says that Defendants have provided no evidence of when a General Manager was hired for the Philadelphia office. *(Opposition at 24 n. 13.)*  In fact, Ms. Andersen's Affidavit gives the date and the personnel file for the new General Manager was produced. *(Andersen Aff. (Ex. 1 to Memorandum) at ¶ 14.)*

Finally, Plaintiff has no response for the fact that Mr. Goldman and Mr. Paulson's testimony about the reasons for Plaintiff's termiation make it impossible for Plaintiff to prove that he would not have been terminated "but for" the alleged retaliation by Ms. Andersen. *(Memorandum at 17.)* As Mr. Goldman said in his EEOC Affidavit:

> I do believe that Mr. Broccoli was let go for mixed reasons – one being highly political. Mr. Paulson was the second in command and assigned to my senior management team. I found out that Mr. Paulson was not a trustworthy individual while I was employed by EchoStar. Mr. Broccoli turned Mr. Paulson into corporate for illegal use of a vehicle and stealing gasoline from the corporation. Mr. Paulson took a company assigned fuel card and used it regularly to fill up his personal vehicels. After Mr. Broccoli blew the whistle, Mr. Paulson retaliated against him, i.e., seeing that he was terminated. …

*(Exhibit N to Opposition at p. 4.)* *(See also Paulson Dep. (Ex. 7) Vol. II at 139:16-21 and 147:13 - 148:2; Goldman Dep. (Ex. 18) at 138:17-139:24).* Evidence which might support a claim that retaliation for protected activity was <u>part of</u> the reason for an adverse action is insufficient to sustain a claim. See <u>Yancey v. National Center on Institutions and Alternatives</u>, 986 F. Supp. 945, 956 (D. Md. 1997). Thus, based upon the undisputed testimony of Plaintiff's own witnesses, Plaintiff's claim for retaliation fails as a matter of law.

### IV. SUMMARY JUDGMENT IS APPROPRIATE AS TO ALL OF PLAINTIFF'S STATE LAW CLAIMS

#### A. Defendants Should Be Granted Summary Judgment on Plaintiff's Invasion of Privacy Claim.

Defendants explained in their Memorandum that in Maryland the tort of invasion of privacy has not been recognized where it is predicated upon allegations of sexual harassment in the workplace, and that existing case law strongly suggests that the Maryland Court of Appeals would not extend the tort of invasion of privacy under these circumstances. Though Plaintiff notes some of the distinguishing facts of the cases discussed by Defendants, Plaintiff does not address the legal issue that recognizing the tort of invasion of privacy in this context would be

both duplicative of Title VII and Article 49B and would undercut the careful balance struck by the legislature in enacting prohibitions on workplace discrimination. Moreover, Plaintiff also fails to provide any legal support for his assertion that Maryland would recognize the tort of invasion of privacy in the instant circumstances. In fact, Plaintiff's statement that Ms. Andersen should not be allowed to "hide behind" the corporate entities highlights the very issue. Creation of substantive liability for sexually harassing conduct outside of the remedial schemes of Title VII and Article 49B is within the province of Congress or the Maryland Legislative, not the Courts.

In addition, Plaintiff's assertion that his invasion of privacy claim is not predicated upon the same facts as his sexual harassment claim is puzzling. We are at a loss to understand what part of the allegedly offensive conduct identified in his discussion of his invasion of privacy claim Plaintiff does not believe supports his sexual harassment claim. Is it Plaintiff's position that only conduct that occurs in the workplace can support a sexual harassment claim? The only conduct outside of the workplace or a work related activity that Plaintiff has identified is Plaintiff's claim that Ms. Andersen called him at home a couple of times.[4] *(Plaintiff Dep. (Ex. 2) at 263:19-21.)* Such conduct, if believed, would clearly fall within the gambit of workplace harassment, and hardly constitutes sufficient grounds for the creation of an entirely new cause of action.

Plaintiff argues that the allegations of Rogers v. Loews L'Enfant Plaza Hotel, 526 F. Supp. 523 (D.D.C. 1981), are similar to the instant matter. In Rogers, the Court held that

---

[4] Plaintiff cannot rely on the allegation in his Complaint that Ms. Andersen called him at home "frequently." First, the "non-moving party cannot rest on the allegations in [his] pleading." Kimsey v. Myrtle Beach, 109 F.3d 194, 195 (4th Cir. 1997) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986)). Second, it contradicts his clear testimony that Ms. Andersen called him at home "a handful of times." *(Plaintiff Dep. (Ex. 2) at 263:19-21.)*

persistent and unwanted telephone calls could, in theory, constitute an invasion of privacy, and accordingly denied a motion to dismiss the plaintiff's invasion of privacy claim. Rogers, 526 F. Supp. at 528. Maryland too has recognized repeated telephone calls may provide the basis for an invasion of privacy claim, but those cases make it clear that Plaintiff's allegations do not sustain a claim for invasion of privacy.

In Summit Loans, Inc. v. Pecola, 265 Md. 43 (1972), the Maryland Court of Appeals held that evidence of well over 200 calls in a period of less than a year and a half, including threats against the plaintiff's children and husband, was sufficient to state a claim of invasion of privacy. However, in this case, Plaintiff does not allege such persistent and vicious telephone calls, but rather claims that he was subjected to a "handful of calls" over the entire term of his employment. Such allegations do not support an invasion of privacy claim. See Household Finance Corp. v. Bridge, 252 Md. 531 (1969) (holding that evidence of 5 or 6 phone calls to the plaintiff and 2 or 3 to her parents over the period of 11 months was insufficient to state a claim).

Plaintiff's allegations simply do not state a claim for invasion of privacy under the current case law, and Plaintiff has offered nothing to suggest that the Maryland Court of Appeals would so expand Maryland law. Defendants' Motion should thus be granted on this claim.

**B.     Defendants Should Be Granted Summary Judgment on Plaintiff's Breach of Contract and Wage Payment Act Claims.**

Defendants explained in their Memorandum that Plaintiff's breach of contract and Wage Payment Act claims were not sustainable because he was not due the incentives he claims since he was not performing the duties of a Field Service Manager at the time and other individuals were. Plaintiff has offered no persuasive response.

Plaintiff attempts to counter the clear testimony of Chip Paulson, Tammy Fornelius, and Stacie Andersen that Plaintiff was not in the role of FSM and therefore not entitled to incentives

*(Andersen Dep. (Ex. 6) at 119:6-9, 122:17-20, and 139:13-19; Paulson Dep. (Ex. 7) Vol. I at 63:2 – 65:4 and Vol. II at 27:20 – 30:21 at Exhibit 12 thereto; Fornelius Dep. (Ex. 8) at 71:17 – 72:4 and 129:1-7)*, with the testimony of Sandy Fuller, who supervised dispatching and invoicing (not installers or Field Service Managers), and Plaintiff's own contradictory testimony. Ms. Fuller testified that Plaintiff was still responsible for a team of installers when Plaintiff was taken off the incentive grids. *(Fuller Dep. (Ex. 20) at 157:17 – 158:8.)* Ms. Fuller also states that she was responsible for the incentive grids, but admits that she did not supervise installers or Field Service Managers. *(Fuller Dep. (Ex. 20) at 30:4-13.)* Plaintiff, however, claims that Ms. Andersen was responsible for the incentive grids. *(Plaintiff Dep. (Ex. 2) at 284:12-14.)* Plaintiff simply has no response to the fact that Mr. Paulson admitted that he himself might have made the final decision to take Plaintiff off the incentive grids. *(Paulson Dep. (Ex. 7) Vol. I at 64:11 – 65:5.)*

More importantly, Plaintiff's theory that he was due incentives during this period is revealed for its chimerical nature by Plaintiff's own testimony. Plaintiff claims that he was due incentives until his title officially changed from Field Service Manager to Associate Program Manager on July 21, 2001. He testified, however, that his duties did not change at all with his promotion to Associate Program Manager. That is his duties did not change at all from January 2001 until his termination. *(Plaintiff Dep. (Ex. 2) at 131:6-14 and 141:1 – 142:3.)* Thus, Plaintiff's belief that he was owed incentive pay relies exclusively upon Plaintiff's title and not his duties. The right to wages under the Wage Payment Act is not related to title, but rather only to remuneration that has been promised for service. See Md. Code Ann., Lab. and Emp. § 3-501(c). In Plaintiff's own testimony, quoted in the Opposition, Plaintiff admits that he was told that he was going to be taken off the incentive grid because he was being put in for a promotion

*(Plaintiff Dep. (Ex. 2) at 284:7-9)*, thereby negating any claim that he was promised incentives during this interim period.

Plaintiff also has no response on Plaintiff's inability to specify what he claims he is due. The cases cited by Plaintiff for the proposition that employer's bear a greater burden than plaintiff's in wage cases are all Fair Labor Standards Act cases. *(Opposition at 21 n. 15.)* They are inapplicable to the present matter as Plaintiff is not pursuing a FLSA claim.

### C. Plaintiff's Reply Fails to Present Facts or Law Sufficient to Defeat Defendants' Motion for Summary Judgment On Plaintiff's Tortious Interference with Prospective Advantage and Defamation Claims.

#### 1. Defamation

Plaintiff's Opposition fails to address the limitations bar to Plaintiff's defamation claim, and mentions Plaintiff's defamation claim only in a footnote which states that Plaintiff was unable to uncover additional facts to support his defamation claim. *(Opposition at 31 n. 16.)* Plaintiff has thus conceded that he has no evidence to support his defamation claim. Accordingly Plaintiff's defamation claim should be dismissed.

#### 2. Tortious Interference with Prospective Advantage

In their Memorandum, Defendants explained that Plaintiff's tortious interference with prospective advantage claims fails because the requisite economic relationships do not exist and because Plaintiff cannot establish that he was damaged by the allegedly tortious conduct. This is because Dr. Kim and Plaintiff were not parties or potential parties to a contract or even a potential contract as Plaintiff was not seeking employment with Dr. Kim and Dr. Kim was not considering hiring him. Dr. Kim was only considering whether to recommend him to her company.

13

Plaintiff's response to both points is essentially that there was a "potential" economic relationship, and that Ms. Andersen's statements led Dr. Kim to chose not to recommend Plaintiff for a job. This evidence is far too tenuous to state a claim. It is undisputed that Plaintiff had not applied for a job with Dr. Kim or her company. Thus, there was a "potential" employment relationship only in the most general sense that Plaintiff had a potential employment relationship with all employers.

In order to find that these facts are sufficient to state a claim, the Court would have to heap assumption upon assumption. It would have to be assumed that Plaintiff would have applied for a job with Dr. Kim's company, that Plaintiff would have met the objective qualifications for such a job, and that Plaintiff would be considered for the job. In addition, it would have to be assumed that Dr. Kim's company would have asked Dr. Kim whether she recommended Plaintiff for a job, Dr. Kim would have said that she did not recommend Plaintiff (even though she testified clearly that she knew Plaintiff to responsible and have a strong work ethic and leadership and management skills), and Plaintiff would not have been hired as a result. Alternatively, it would have to be assumed that someone from Dr. Kim's company would have called EchoStar for a reference, would have spoken with Ms. Andersen, Ms. Andersen would have answered the questions as alleged by Dr. Kim, and Plaintiff would not have been hired as a result. The evidence presented by Plaintiff is thus precisely the sort of scintilla of evidence that the Supreme Court has held is insufficient to defeat summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).

## V. CONCLUSION

For the foregoing reasons and those set forth in Defendants' Memorandum, Defendants' Motion for Summary Judgment should be granted in its entirety and judgment should be entered in favor of Defendants and against Plaintiff as a matter of law.

        Respectfully submitted,


        /s/
        Robert R. Niccolini (Bar No. 24873)


        /s/
        Elena D. Marcuss (Bar No. 25547)
        McGuireWoods LLP
        Seven St. Paul Street, Suite 1000
        Baltimore, Maryland  21202
        (410) 659-4400

        Attorneys for Defendants
        EchoStar Communications Corp.,
        Dish Network Service Corp., and
        Stacie Andersen

## APPENDIX OF EXHIBITS

| Ex. No. | Description |
| --- | --- |
| 1 | Affidavit of Stacie Andersen |
| 2 | Select portions of the Deposition of Dino Broccoli – Volumes I and II |
| 6 | Select portions of the Deposition of Stacie Andersen |
| 7 | Select portions of the Deposition of Forrest Paulson – Volumes I and II |
| 8 | Select portions of the Deposition of Tammy Fornelius |
| 16 | Certification of Trustee in Support of Motion to Reopen Case, Voiding Abandonment and Reappointing Andrew Sklar as Chapter 7 Trustee |
| 18 | Select portions of the Deposition of Larry Goldman |
| 19 | Docket Sheet for In the Matter of: Dino J. Broccoli dated dated October 18, 2004 and Docket Nos. 21, 22 and 23 |
| 20 | Select portions of the Deposition of Sandy Fuller |
| 21 | Plaintiff's Interrogatory to DNSC No. 15 |
| 22 | <u>Marshall v. Illinois Dept. of Human Services</u>, 2004 U.S. Dist. LEXIS 2296 (N.D. Ill. 2004) |

\\LAB\520570.1